IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MONIQUE DAVIS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-23-610-SM |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Monique Davis (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 11-12.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge erred in his evaluation of Plaintiff's bilateral hand limitations. Doc. 13, at 10-20. After a careful review of the administrative record (AR), the parties'

briefs, and the relevant authority, the Court reverses and remands the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines a disabled individual as a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

2

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 16-28; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since July 24, 2021, the amended alleged onset date;

(2) had the severe medically determinable impairments of diabetes mellitus with neuropathy, bilateral carpal tunnel syndrome (CTS) status post right and left side release surgeries, bilateral carpometacarpal (CMC) thumb osteoarthritis, obesity, major depressive disorder, and posttraumatic stress disorder (PTSD);

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] (RFC) to perform light work with additional limitations, including that she can frequently but not constantly handle, finger, and feel bilaterally;

(5) was unable to perform her past relevant work;

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

3

(6) could perform jobs that exist in significant numbers in the national economy such as assembler, DICOT 701.687-010; produce sorter, DICOT 529.687-186; and bottling line attendant, DICOT 920.687-042; and so,

(7) had not been under a disability from July 24, 2021 through January 10, 2023.

*See* AR 16-28.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *id.* at 3-8, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted). The Court "remain[s] mindful that

'[e]vidence is not substantial if it is overwhelmed by other evidence in the record.'" *Wall*, 561 F.3d at 1052 (alteration in original) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)).

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

5

### B. The ALJ erred in his reliance on "updated evidence" and a "different interpretation of the evidence."

Consultative examiner Dr. S.A. Chaudry examined Plaintiff on July 19, 2021, twelve days after her right-hand release surgery and eleven days before her left-hand release surgery. AR 845-47, 25. In evaluating Plaintiff's carpal tunnel syndrome, the ALJ found:

> The consultative examiner noted on hand/wrist sheet assessment that the claimant has the ability to manipulate small objects "with difficulty" and cannot effectively grasp tools such as a hammer. Paresthesia of the hands was also noted. Nevertheless, the consultative examiner could not adequately examine right hand as the release surgery had only been performed 12 days prior to the exam, and left-hand findings were prior to the release surgery by 11 days (7/30/2021). So, *the consultative examiner's hand findings are not wholly persuasive because the claimant's hands were in an acute phase with either post-surgical healing or surgical intervention occurring imminently.*

AR 25 (emphasis added) (citations omitted).

Turning to the state agency physicians' opinions, the ALJ found "[t]he State agency medical consultants concluded in the initial and reconsidered review that [Plaintiff] was capable of performing simple work at the light exertional level with no manipulative limitations." *Id.* He found their assessments persuasive given their "consistency with the record as a whole." *Id.*

State agency physician Dr. James Metcalf gave his opinion on July 20, 2021, shortly after Plaintiff's first release surgery. *Id.* at 89-92. On the

6

November 9, 2021 reconsideration, Dr. Ronald Painton adopted the same findings as Dr. Metcalf. *Id.* at 107-08. Both state agency doctors cited consultative examiner Dr. Chaudry in their determinations who concluded that Plaintiff "will have this rfc 1 year from date of surgery. 7/7/22." *Id.* at 92, 107.

The ALJ also noted that the state agency consultants' initial conclusion omitted any manipulative limitations and "failed fully to evaluate the full effect of [Plaintiff's] hand impairments." *Id.* at 25. So the ALJ settled on an RFC assessment that included a limitation to frequent handling, fingering, and feeling. *Id.* The ALJ concluded that his "review of the medical evidence as currently developed" supported this conclusion. *Id.* He stated:

> This decision is based on updated evidence that was not available for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency physician. The claimant has undergone bilateral CTS releases and has bilateral CMC.

*Id.* at 26.

Plaintiff argues that the ALJ relied on his own lay opinion in formulating the RFC assessment. Doc. 13, at 14. She testified about her continued pain, numbness, and tingling in her hands. AR 22. So, she argues the ALJ should have obtained another opinion about the "updated evidence" the ALJ references, given that frequent handling requires the ability to do so up to two-

7

thirds of the workday. Doc. 13, at 14-15. Relatedly, she argues that the ALJ failed to "build an accurate and logical bridge" between the evidence he relied on and the RFC assessments. *Id.* at 18 (citing *Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. Nov. 19, 2004); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) ("We conclude that there is not an 'accurate and logical bridge' between the ALJ's recitation of the medical evidence and the decision to account for [claimant's] mental impairments by limiting him to unskilled work.").

The Commissioner responds that Plaintiff's examinations post-dating the state agency consultations showed no complaints or abnormalities related to Plaintiff's hand and wrist impairments. Doc. 15, at 9. She also points out that Plaintiff chose not to appeal a prior ALJ decision (dated September 4, 2020), where the ALJ determined Plaintiff could frequently but not constantly handle, finger, and feel. *Id.* (citing AR 65-66). Thus, she argues, the ALJ had no duty to further develop the record. *Id.* at 11.

Plaintiff cites *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012), in arguing the ALJ failed to provide a proper explanation for his findings. Doc. 13, at 19. *Chapo* clarified that it is not error for an ALJ to "temper" a medical opinion "in the claimant's favor" by assigning a more restrictive RFC than the opinion suggests. 682 F.3d at 1288 ("[W]e are aware of no controlling authority

8

holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit."). "[I]f a medical opinion adverse to the claimant has properly been given substantial weight [or evaluated for persuasiveness],[3] the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Id.*

But that is not entirely what the ALJ did here. Instead, the ALJ found the state agency physicians' opinions persuasive but then noted these opinions did not evaluate the full effect of Plaintiff's hand impairments. AR 25. Next, he limited Plaintiff to frequent handling, fingering, and feeling, a more favorable assessment. *Id.* But in doing so, the ALJ appears to have arbitrarily relied on a "different interpretation of the evidence" and "updated evidence," without indication as to what those terms mean or how they support a limitation to frequent versus occasional handling, fingering, and feeling.

Although the ALJ discounted Plaintiff's consistency, *id.* at 22, he did not solely rely on this in formulating the RFC assessment. As noted, he cited

---

[3] *Chapo* was decided when the applicable procedure involved assigning "weight" to a medical opinion. The regulations have since been amended to instruct ALJs to evaluate the "persuasiveness" of an opinion instead. Still the Court finds that *Chapo's* reasoning remains applicable under the amended regulations.

"updated evidence" and a "different interpretation of the evidence" without citation to the record or an explanation of what either the information or interpretation entails. *Id.* at 26. He did not refer to the previous ALJ decision, as the Commissioner suggests, beyond citation to the "entire record." *Id.* at 21. And that previous decision was dated September 2020—several months before Plaintiff's bilateral CTS releases. Without more, the Court cannot determine whether the ALJ used his "own credibility judgments, speculation, or lay opinion" when assessing Plaintiff's ability to frequently handle, feel, and finger. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

This failure warrants remand. And on remand, the ALJ should consider whether a consultative examination should be ordered. *See Hawkins v. Chater*, 113 F.3d 1162, 1166-1167 (10th Cir. 1997) (Once the claimant has presented evidence suggesting a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.").

### III. Conclusion.

Based on the above, the Court REVERSES and REMANDS the Commissioner's decision.

**ENTERED** this 4th day of December, 2023.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE